# IN THE COURT OF APPEALS OF IOWA

No. 25-0349
Filed January 28, 2026

**Compass Group USA and AIU Insurance Company,**
Plaintiffs–Appellants,

v.

**Todd Hawk,**
Defendant–Appellee.

Appeal from the Iowa District Court for Polk County,
The Honorable Coleman McAllister, Judge.

**AFFIRMED**

Nathan R. McConkey of Huber, Book, Lanz & McConkey, PLLC, West
Des Moines, attorney for appellants.

Corey J.L. Walker of Walker, Billingsley & Bair, Newton, attorney for
appellee.

Considered without oral argument
by Schumacher, P.J., and Badding and Langholz, JJ.
Opinion by Badding, J.

**BADDING, Judge.**

Throughout this workers' compensation case, Compass Group USA and AIU Insurance Company[1] challenged the credibility of claimant, Todd Hawk, and his expert witnesses. Compass lost that challenge at every step— including this one, where it again challenges the Iowa Workers' Compensation Commissioner's credibility findings. We reject Compass's request to overturn these findings and affirm the district court's judicial review ruling.

On May 21, 2021, Hawk was working at his maintenance job for Compass when his back "popped." He felt immediate pain in his lower back and leg, which he reported to his employer. Hawk sought workers' compensation benefits for his injury in March 2022.

Compass stipulated that Hawk suffered a work injury but denied that it caused a permanent disability. At an arbitration hearing before the deputy commissioner in June 2023, Compass argued that Hawk's "testimony regarding his alleged conditions, symptoms and complaints and their relationship to his work injury cannot be believed" based in part on video surveillance evidence that showed Hawk carrying groceries into his home. The deputy disagreed, finding there were no "specific activities on the surveillance footage that would clearly violate" Hawk's medical restrictions. The deputy continued:

> The undersigned had the opportunity to observe Mr. Hawk at the evidentiary hearing, via Zoom. Claimant presented as a kind and pleasant individual. It appeared as though he answered every question to the best of his ability. He did not provide the undersigned with any reason to question the veracity of his testimony.

---

[1] We refer to these entities collectively as "Compass."

The deputy also rejected Compass's expert opinions on causation, finding that Hawk's experts were more credible and persuasive. In line with those opinions, the deputy concluded that Hawk "carried his burden of proving the stipulated work injury permanently and materially aggravated his pre-existing, degenerative low back condition." *See Floyd v. Quaker Oats*, 646 N.W.2d 105, 110 (Iowa 2002) ("Full compensation is allowed for the result of workplace activities aggravating a preexisting condition."). But the deputy determined that Hawk was not yet entitled to permanent partial disability benefits because his experts had not placed him at maximum medical improvement.

The commissioner adopted the deputy's decision on intra-agency appeal and affirmed it in its entirety. Compass then filed an unsuccessful petition for judicial review, leading to this appeal. On appeal, Compass claims that the district court erred in affirming the agency's credibility assessments and permanency determination. We disagree.

Our resolution of these issues is largely controlled "by the deference we afford to decisions of administrative agencies." *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 844 (Iowa 2011); *see also Sellers v. Emp. Appeal Bd.*, 531 N.W.2d 645, 646 (Iowa Ct. App. 1995) ("The administrative process presupposes judgment calls are to be left to the agency. Nearly all disputes are won or lost there." (internal citation omitted)). Judicial review of agency decisions is governed by Iowa Code chapter 17A (2024). *Chavez v. MS Tech., LLC*, 972 N.W.2d 662, 666 (Iowa 2022). "We apply the standards of section 17A.19(10) to determine if we reach the same results as the district court." *Brakke v. Iowa Dep't of Natural Res.*, 897 N.W.2d 522, 530 (Iowa 2017) (cleaned up).

Under those standards, we must "reverse, modify, or grant other appropriate relief" if we decide the agency's factual findings are "not supported by substantial evidence." Iowa Code § 17A.19(10)(f). "Substantial evidence" means the quantity and quality of evidence a reasonable person would find sufficient to establish the fact at issue. *Id.* § 17A.19(10)(f)(1). Determining "whether evidence 'trumps' other evidence or whether one piece of evidence is 'qualitatively weaker' than another piece of evidence is not an assessment for the district court or the court of appeals to make when it conducts a substantial evidence review of an agency decision." *Arndt v. City of Le Claire*, 728 N.W.2d 389, 394 (Iowa 2007). Yet that is what Compass asks this court to do.

Compass highlights discrepancies in Hawk's testimony that it urges rendered him not credible. And it argues that the "more trustworthy, objective evidence" about the permanency of Hawk's condition came from its experts, who stated that Hawk's work injury "resulted solely in a temporary aggravation of his preexisting, degenerative condition without any related permanent impairment or restriction." (Emphasis removed.) But in judicial review proceedings, we do not weigh the evidence de novo. *See Dunlavey v. Econ. Fire & Cas. Co.*, 526 N.W.2d 845, 849 (Iowa 1995). "It is the commissioner's duty as the trier of fact to determine the credibility of the witnesses, weigh the evidence, and decide the facts in issue." *Arndt*, 728 N.W.2d at 394–95. "We give deference to the commissioner's credibility findings, and we will affirm if there is substantial evidence in the record to support these findings." *Dodd v. Fleetguard, Inc.*, 759 N.W.2d 133, 137 (Iowa Ct. App. 2008) (internal citation omitted).

On our review of the record, we find there was substantial evidence to support the agency's credibility findings and the weight it gave to the

competing expert opinions on permanency. *See Pease*, 807 N.W.2d at 844 ("Evidence is not insubstantial merely because different conclusions may be drawn from the evidence."). We do not "recount in further detail all of the facts that support and detract" from those findings because it "would unduly lengthen this opinion—and add little to our jurisprudence," especially considering the district court's thorough and well-reasoned review of the same arguments. *Wal-Mart Stores, Inc. v. Caselman*, 657 N.W.2d 493, 501 (Iowa 2003).

Aside from challenging the credibility findings, Compass also argues that it was an error of law for the agency to find that Hawk was permanently impaired but not yet at maximum medical improvement. *See Meyer v. IBP, Inc.*, 710 N.W.2d 213, 218 (Iowa 2006) (stating the agency's application of law to the facts can be affected by an "erroneous interpretation of law"); Iowa Code § 17A.19(10)(c). Compass is correct that our supreme court has stated that "a claim for permanent disability benefits is not ripe until maximum medical improvement has been achieved." *Bell Bros. Heating & Air Conditioning v. Gwinn*, 779 N.W.2d 193, 200–201 (Iowa 2010) (noting that "maximum physical recovery marks the end of the temporary disability benefits, and at that point, any permanent disability benefits can be considered"). But the district court determined the agency correctly concluded "that this case falls within an exception" to that general rule. We agree.

In *Bell Brothers*, the court explained that a

> finding by the commissioner that the injuries sustained by a worker produced a permanent impairment is only relevant in determining an award for permanent disability benefits. Thus, it is only necessary for the commissioner to determine the existence of a permanent impairment once a claim for permanent disability benefits is ripe.

5

We acknowledge it is possible, in many cases, for the commissioner to decide the existence of a permanent impairment, as the commissioner did in this case, in advance of maximum medical improvement and before the claim for permanent disability benefits is ripe for adjudication. *Yet, this approach should be limited to those instances when the period of recovery and stabilization will only produce evidence relevant to the degree of permanent disability.*

*Id.* at 201 (emphasis added).

The agency reasoned that exception applied here, where neither of the experts that it found most credible placed Hawk at maximum medical improvement. One of the experts, Dr. John Rayburn, had outlined a multi-step treatment plan for Hawk in January 2022. Hawk completed the first step—bilateral medial branch block injections—that March. But after those injections, Compass denied authorization for further care. Hawk then obtained an independent medical evaluation from Dr. John Kuhnlein, who noted that Hawk's treatment with Dr. Rayburn was "stopped 'midstream' and should be resumed." Dr. Kuhnlein stated that if Hawk "resumes medical care for this injury, he has not reached maximum medical improvement."

The agency found those treatment recommendations were "reasonable and appropriate, and may provide, or lead to additional recommendations that may affect claimant's functional abilities." As a result, the agency concluded

> that it would be premature to determine the level of claimant's permanent disability at this time. Recommendations for treatment exist and such treatment should be undertaken before a determination of claimant's permanent disability occurs. Claimant has been denied care under the workers' compensation system. If claimant's condition is able to be treated, it is possible his functional abilities and earning capacity will increase.

We find substantial evidence supports the agency's implicit determination that the additional treatment recommended by Drs. Rayburn and Kuhnlein would only affect the extent—not the existence—of Hawk's permanent impairment. Thus, the agency did not err in finding that this case fell within the narrow exception outlined in *Bell Brothers*. *Id.* at 201–02. Because the district court reached the same conclusion, we affirm its ruling.

**AFFIRMED.**